**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**SARAH LANAE TURNLEY, ET AL**

**VERSUS**

**CARRINGTON MORTGAGE SERVICES, LLC**

**CIVIL ACTION**

**NO. 25-769-JWD-SDJ**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have **14 days** after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within **14 days** after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 8, 2026.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**SARAH LANAE TURNLEY, ET AL**

**CIVIL ACTION**

**VERSUS**

**NO. 25-769-JWD-SDJ**

**CARRINGTON MORTGAGE SERVICES, LLC**

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is a Motion to Dismiss filed by Defendant Carrington Mortgage Services, LLC, on September 17, 2025 (R. Doc. 5). In its Motion, Carrington seeks dismissal of Plaintiffs' claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs Sarah Lanae Turnley and Ceara Lasah Turnley, who are proceeding *pro se* in this matter, filed a Memorandum in Opposition to the Motion on May 12, 2026 (R. Doc. 20) after being granted an extension to file out of time (R. Doc. 19). Defendant filed a Reply in Support of its Motion on May 26, 2026 (R. Doc. 23). For the following reasons, the Court recommends Defendant's Motion to Dismiss be **granted** and Plaintiffs' claims against the Defendant be **dismissed**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Percy Lawrence Turnley, Jr., was the owner of immovable property located at 8380 North Parkland Drive, Baton Rouge, LA 70806.[1] Percy Lawrence Turnley, Jr., executed a Promissory Note made payable to the order of Taylor, Bean & Whitaker Mortgage Corp. in the principal amount of $117,826.00.[2] As borrowers, Percy Lawrence Turnley Jr. and Ella Mae Turnley

---

[1] R. Doc. 5-2.
[2] R. Doc. 5-2.

executed a mortgage on the Property, which secured the Note.[3] The Mortgage was recorded in the East Baton Rouge Parish, State of Louisiana.[4] The Note was endorsed in blank, without recourse, and Carrington is the holder of the Note.[5]

In 2015, in order to accommodate the financial hardships of the Borrowers, the Note and Mortgage were modified by the Borrowers and Carrington—via authentic act—in accordance with La. R.S. 9:5390(A).[6] Then, in 2017, the Note and Mortgage were further modified by the Borrowers and Carrington—via authentic act—in accordance with La. R.S. 9:5390(A).[7] In the 2017 Loan Modification, Ella Mae Turnley agreed to pay all of the original terms and conditions of the Note and Mortgage.[8]

After Percy Lawrence Turnley, Jr. died, Ella Mae Turnley, Ceara Turnley, Joshua Turnley, Senetra Turnley, and Kristalyn Turnley acquired the one-half interest of the Property from the Estate of Percy Turnley, Jr.[9] Then, after the Borrowers' default, Carrington filed a Petition for Executory Process instituting a foreclosure action against Borrowers seeking to collect all amounts due pursuant to the Note and to recognize the Mortgage.[10] After considering the Petition and the evidence, the State Court ordered that a Writ of Seizure and Sale be issued on April 22, 2025. In response, the Plaintiffs attempted to stop the foreclosure proceedings in the State Court Action, but the Court denied their Motion for Stay and Injunction and allowed the foreclosure to continue.

On June 25, 2025, Plaintiffs filed a Petition for Damages against Carrington arising from claims and damages related to the foreclosure action on their parents' mortgage loan.[11] The

---

[3] R. Doc. 5-2.
[4] R. Doc. 5-2.
[5] R. Doc. 5-2.
[6] R. Doc. 5-2.
[7] R. Doc. 5-2.
[8] R. Doc. 5-2.
[9] R. Doc. 5-2.
[10] R. Doc. 5-2.
[11] R. Doc. 1-1.

Complaint is two pages long in substance and includes a total of ten factual allegation paragraphs. On August 27, 2025, Defendant Carrington filed a Notice of Removal with this Court.[12]

The Plaintiffs claim that, after their father's death, Carrington refused to recognize the Plaintiffs as "successors-in-interest."[13] Plaintiffs allege that Carrington required the Plaintiffs to obtain signatures from the Borrowers on the Mortgage Loan, but Plaintiffs were estranged from their mother, who "vacated the property in 2023 and maintained no legal or financial responsibility."[14] In the Plaintiffs' "Supplemental Filing in Support of Sworn Affidavit" attached to their Complaint, the Plaintiffs admit that Carrington allowed the Plaintiffs' mother, Ella Turnley, to apply for mitigation assistance to prevent the foreclosure, but Ella Turnley refused Carrington's offer and refused to allow the Plaintiffs to be added to the Mortgage Loan.[15] Additionally, Exhibit C to the Complaint shows that Carrington sent a "Borrower Authorization" letter to the Borrowers to add the Plaintiffs as authorized third parties on the Mortgage Loan, but the Plaintiffs' mother refused to sign the authorization.[16]

Plaintiffs claim that Defendant Carrington failed to recognize their successor in interest rights in violation of the Real Estate Settlement Procedures Act and brought vague claims under the Americans with Disabilities Act, Deceptive and Unfair Trade Practices under 15 U.S.C. §45, Discrimination under the Fair Housing Act, 42 U.S.C. §3604, and a state law claim for negligent infliction of emotional distress.[17]

---

[12] R. Doc. 1.
[13] R. Doc. 1-1 at 5.
[14] R. Doc. 1-1 at 5.
[15] R. Doc. 1-1 at 8.
[16] R. Doc. 1-1 at 19.
[17] R. Doc. 1-1 at 6.

## II. LAW AND ANALYSIS

### A. Rule 12(b)(6) Standard

Pursuant to Rule 12(b)(6), a defendant can seek dismissal of a complaint, or any part thereof, for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Shiell v. Jones*, No. 19-848, 2020 WL 2331637, at *10 (E.D. La. May 11, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Shiell*, 2020 WL 2331637, at *10 (quoting *Iqbal*, 556 U.S. at 679).

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). "Dismissal is appropriate when the complaint on its face shows a bar to relief." *Shiell*, 2020 WL 2331637, at *10 (quoting *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court does not assume the truth of conclusory statements but rather looks for facts which support the elements of the pleader's claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

### B. Standard for *Pro Se* Litigations

Plaintiffs are proceeding in this litigation *pro se*. *Pro se* pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also S.E.C. v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that a court "must construe [a *pro se* plaintiff's] allegations and briefs more permissively"). A court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam). Nevertheless, "a *pro se* litigant is not exempt . . . from compliance with relevant rules of procedural and substantive law." *NCO Fin. Sys., Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)) (internal quotations omitted). As such, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Johnson,* 999 F.2d at 100 (citation omitted).

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts." *Kiper v. Ascension Parish Sch. Bd*., No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)). A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs." *Id.* And "[a] *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *NCO Fin. Sys.*, 2008 WL 2277843, at *3 (citing *Birl*, 660 F.2d at 593). Finally, "[w]hile much liberality is allowed in construing *pro se* complaints, a *pro se* litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim." *Richardson v. United Wholesale Mortgage, LLC*, No. 24-276, 2024 WL 5264095, at *5 n. 24

(M.D. La. Dec. 31, 2024) (quoting *Samtani v. City of Laredo*, 274 F. Supp. 3d 695, 698 (S.D. Tex. 2017)).

**C. Discussion**

**a. The Plaintiffs' RESPA claims are legally deficient.**

Defendant Carrington argues that Plaintiffs' RESPA claims fail for at least three reasons: (1) Plaintiffs fail to plausibly allege that any communication or written request qualified as a Qualified Written Request under RESPA or plausibly allege any facts to state a valid cause of action under the remaining elements of a RESPA; (2) Plaintiffs do not qualify as "borrowers" under RESPA and therefore cannot assert a RESPA claim; (3) Plaintiffs fail to allege the Mortgage Loan is a "federally related mortgage".[18] The Court agrees entirely.

**i. The Plaintiffs fail to allege the necessary elements of a RESPA claim.**

RESPA was enacted to provide "consumers ... with greater and more timely information on the nature and costs of the settlement process and [to ensure consumers] are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."[19] RESPA only applies to federally related mortgages, is limited in its applicability and has limited private rights of actions.[20] RESPA establishes liability for damages caused by failures to comply with § 2605(e).[21]

Under Section 2605(e), RESPA provides that if any servicer of a federally related mortgage loan receives a qualified written request from the borrower for information relating to the servicing of such loan, that the servicer must provide a written response acknowledging receipt of the

---

[18] R. Doc. 5-1 at 6.
[19] 12 U.S.C. § 2601.
[20] See 12 U.S.C. § 2602(1).
[21] 12 U.S.C. § 2605(f).

correspondence within five days (excluding Saturday, Sunday and legal public holidays).[22] A written response is expected to be sent within 30 days of the receipt of the QWR (excluding Saturday, Sunday and legal public holidays).[23] A QWR is a written correspondence that enables the servicer to identify the name and account of the borrower and includes a statement of the reasons for the belief of the borrower that the account is in error or provides sufficient detail regarding other information sought by the borrower.[24]

Courts have held that to state a viable claim under Section 2605(e), plaintiffs must plead that their correspondence met the requirements of QWR, that the servicer failed to make a timely response, and that this failure caused them actual damages.[25] To sufficiently show the correspondence met the requirements of the QWR, the petitioner must allege 1) the date the correspondence was sent, 2) whom it was sent to, 3) that the QWR included information that enabled the defendant to identify the name and account of the borrower, 4) a reason for the belief that account was in error, and 5) a summary of the request it set out in the letter.[26]

The Plaintiffs fail to allege any of the five requirements of a RESPA claim. The Plaintiffs do not allege any facts to establish that they submitted an actual QWR to Carrington. At no point do they allege when the QWRs were sent or that the purported QWRs sought information regarding "servicing" as defined under RESPA. Instead, the Plaintiffs claim that their estranged mother (the Borrower under the Mortgage Loan) refused to sign the necessary documentation to allow the

---

[22] 12 U.S.C. § 2605(e)(1).
[23] 12 U.S.C. § 2605(e)(2).
[24] 12 U.S.C. § 2605(e)(1)(B).
[25] *Williams v. Wells Fargo Bank, N.A.*, 560 Fed.Appx. 233, 241 (5th Cir. 2014)(citing to *Hurd v. Bac Loans Servicing, LP*, 880 F. Supp. 2d 747, 768 (N.D. TX 2012)).
[26] *See Hurd,* 88 F. Supp. 2d at 768*; see also Akintunji v. Chase Home Fin., L.L.C.*, 2011 WL 2470709, at *2–3 (S.D.Tex. Jun. 20, 2011) (dismissing RESPA claim where plaintiff failed to allege actual damages); *Hill v. Wells Fargo Bank, NA,* 2011 WL 5869730, at *3 (N.D.Tex. Nov. 17, 2011) (dismissing claim under § 2605(e) where plaintiffs failed to sufficiently allege that they sent a communication meeting the requirements of a qualified written request and failed to make any allegation from which the court could conclude that they suffered or damages as a result of defendant's failure, if any, to respond to any written requests from plaintiffs).

Plaintiffs to be authorized to receive information about the Mortgage Loan. These allegations—even taken as true—fall far short of plausibly alleging the necessary elements of a RESPA claim.

**ii. Civil Liability under REPSA is limited to "borrowers".**

It is well established that only parties to a mortgage can bring a claim under RESPA. 12 U.S.C. § 2605(E)(1) specifically limits the obligations of a loan servicer to respond only to inquiries from a "borrower." Federal courts have consistently held that a homeowner that does not sign the promissory note or loan to be obligated under a mortgage is not a "borrower" and does not have a cause of action under RESPA.[27] Because the Plaintiffs neither signed the Note, nor the Mortgage, and did not assume the obligations under the Mortgage Loan, the Plaintiffs do not qualify as "borrowers" and cannot state a RESPA claim.

**iii. The Plaintiffs fail to allege that the Mortgage Loan is a "federally-related mortgage".**

RESPA is only applicable to "federally related mortgage loan[s]."[28] The Plaintiffs did not allege that this loan was a "federally related mortgage loan."[29] As set forth above, the allegation of a federally related mortgage is an essential element of a viable RESPA claim. Because the Plaintiffs do not allege that the mortgage loan was federally related, they have failed to trigger RESPA. Consequently, the Plaintiffs' attempt to assert a cause of action under RESPA should be dismissed.

---

[27] *Keen v. Helson*, 930 F.3d 799 (6th Cir. 2019)(finding that homeowner was not a "borrower," and thus did not have a cause of action under RESPA). *See also, Correa v. BAC Home Loans Servicing LP*, 853 F.Supp.2d 1203, 1207 (M.D. Fla. 2012); *Mitchell v. Mortg. Elec. Registration Sys., Inc.*, No. 11--cv--425, 2012 WL 1094671, at *2 (W.D. Mich. Mar. 30, 2012); *Stolz v. OneWest Bank*, No., 11--cv--00762, 2012 WL 135424, at *4--5 (D. Or. Jan. 13, 2012); *Mashburn v. Wells Fargo Bank, NA*, 11--0179, 2011 WL 2940363, at *3 (W.D. Wash. Jul 19, 2011); *Singh v. Wells Fargo Bank N.A.,* 11--cv-0401, 2011 WL 2118889, at *4 (E.D. Cal. May 27, 2011); *Thomas v. Guild Mortg. Co*., 09-2687--, 2011 WL 676902, at *4 (D. Ariz. Feb. 23, 2011); *Alexander v. Bank of Am*., 09-4948, 2010 WL 152045, at *2 (N.D. Ill. Jan. 15, 2010).

[28] See 12 U.S.C. § 2602(1).

[29] See 12 U.S.C. § 2602(1): A "federally related mortgage loan" is one "secured by a first or subordinate lien on residential real property," and "made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or [] made in whole or in part by any lender which is regulated by any agency of the Federal Government."

**b. The Plaintiffs' claims for "disability discrimination" under the Fair Housing Act are meritless.**

Plaintiffs vaguely claim that Carrington violated 42 U.S.C. § 3604 of the Fair Housing Act titled "Discrimination in the sale or rental of housing and other prohibited practices." Defendant Carrington argues that the Plaintiff's fail to allege any of the elements or requirements of a Fair Housing Act claim in their Complaint. The Court agrees.

Plaintiffs' claims for "disability discrimination" under 42 U.S.C. § 3604(f) are baseless. § 3604(f) makes it unlawful to:

> (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of--
>
> (A) that buyer or renter,
>
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>
> (C) any person associated with that buyer or renter.
>
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of--
>
> (A) that person; or
>
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>
> (C) any person associated with that person.

Carrington does not own, lease, or rent the Property—it is simply the mortgagee under the Mortgage Loan and is foreclosing on the Property after the Borrowers defaulted on the Mortgage Loan in 2023. Therefore, Plaintiffs fail to allege and cannot allege that Carrington discriminated in the "sale or rental" of a dwelling to any buyer or renter under 42 U.S.C. § 3604(f)(1). Plaintiffs also fail to allege and cannot allege that they are a "buyer or renter" under 42 U.S.C. § 3604(f)(1).

Plaintiffs fail to allege how Carrington discriminated against the Plaintiffs related to their alleged disabilities. The Plaintiffs did not sign or assume the obligations under the Mortgage Loan, and the Plaintiffs admit that their mother refused to sign any documents to allow the Plaintiffs to assume the Mortgage Loan. There are no allegations that Defendant Carrington discriminated

against the Plaintiffs or any allegations that can support a claim under the Fair Housing Act. Accordingly, Plaintiffs' claims for violations of the Fair Housing Act should be dismissed.

**c. The Plaintiffs' claims under the Americans with Disabilities Act are meritless.**

Plaintiffs vaguely claim that Carrington violated the Americans with Disabilities Act.[30] However, Plaintiffs fail to cite any specific provision of the ADA, allege any factual basis on how the ADA applies to the foreclosure of a mortgage loan, or how Defendant Carrington discriminated against the Plaintiffs due to their alleged disabilities. The Complaint is completely devoid of any factual allegations that Defendant Carrington violated the ADA. Accordingly, the Plaintiffs have not plausibly alleged a cause of action against Carrington under the ADA and Plaintiffs' claims under the ADA should be dismissed.

**d. The Plaintiffs' claims under 15 U.S.C. § 45 for unfair trade practices are legally deficient.**

Plaintiff vaguely claims that Carrington violated 15 U.S.C. § 45 titled "Unfair methods of competition unlawful; prevention by Commission." This statute is part of the Federal Trade Commission Act[31] and grants the Federal Trade Commission the authority to prevent and regulate certain unfair or deceptive conduct that affects interstate commerce and is related to antitrust.[32] 15 U.S.C. § 45 does not grant the Plaintiffs with private rights of action against Defendant Carrington.

The Plaintiffs fail to specify what section of this act was violated by Carrington, how the Plaintiffs have standing to assert claims under this statute, or allege any facts to state a private

---

[30] R. Doc. 1.

[31] *See* § 3006. Federal antitrust laws—Federal Trade Commission Act, 3 West's Fed. Admin. Prac. § 3006 explaining that the Federal Trade Commission Act grants "the Federal Trade Commission the power to prevent unfair methods of competition, and unfair or deceptive acts or practices in or affecting commerce; seek monetary redress and other relief for conduct injurious to consumers; prescribe trade regulation rules defining with specificity acts or practices that are unfair or deceptive, and establishing requirements designed to prevent such acts or practices; conduct investigations relating to the organization, business, practices, and management of entities engaged in commerce; and make reports and legislative recommendations to Congress."

[32] 15 U.S.C. § 45 (a)(1).

cause of action under the 15 U.S.C. § 45 against Carrington. Accordingly, the Plaintiffs' claims under 15 U.S.C. § 45 should be dismissed.

**e. The Plaintiffs' claim for negligent infliction of emotional distress is deficient.**

Defendant Carrington argues that Plaintiffs' claim for negligent infliction of emotional distress is deficient for numerous reasons. The Court agrees. The Louisiana Supreme Court has recently held that, in order to state a claim for negligent infliction of emotional distress, a plaintiff must first prove negligence which has "five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element)."[33]

In their Opposition, Plaintiffs allege that Defendant's conduct has created an ongoing and severe emotional and financial burden, as Plaintiffs continue to attempt to save their deceased father's home while facing imminent foreclosure. However, the Plaintiffs fail to plausibly allege facts to establish the elements of a negligence claim.[34] First, Defendant Carrington owes no duty to the Plaintiffs because it does not have a contract or mortgage with the Plaintiffs. Second, the Plaintiffs fail to allege which actions by Defendant Carrington failed to conform to the appropriate standard. The Borrower—Ella Turnley—was estranged from the Plaintiffs and refused to sign Carrington's authorization to allow the Plaintiffs to be listed as authorized third parties on the

---

[33] *Spencer v. Valero Ref. Meraux, L.L.C.*, 2022-00469 (La. 1/27/23), 356 So. 3d 936, 949.
[34] R. Doc. 20 at 3.

Mortgage Loan based on the Plaintiffs' own Complaint and Exhibits attached to the Complaint. Thus, the Plaintiffs fall far short from plausibly alleging any facts to support the breach of duty element of a negligence claims. Third, the Plaintiffs admit that their "PTSD, anxiety, and depression" were present prior to the foreclosure.[35] Plaintiffs claim that Carrington's failures caused Plaintiffs "to lose employment, incur financial debt, and face potential homelessness."[36] However, the Plaintiffs fail to plausibly allege how Defendant Carrington's actions in foreclosing on the Mortgage Loan—a right guaranteed by the Mortgage Loan—caused the Plaintiffs' alleged injuries. In sum, Plaintiffs cannot plausibly allege facts to satisfy the elements for a negligence claim. For these reasons, the Plaintiffs' negligent infliction of emotional distress claim must be dismissed.

Moreover, even if the Plaintiffs were able to allege that they assumed the Mortgage Loan, Plaintiffs could not recover non-pecuniary damages under the Mortgage Loan. Courts have directly answered this issue by holding "a mortgage or loan contract does not by its nature satisfy a nonpecuniary interest" and thus cannot support a claim for non-pecuniary damages under Article 1998.[37] In *Floyd v. Wells Fargo Home Mortgage Co*., the Eastern District of Louisiana analyzed Louisiana law pertaining to the availability of nonpecuniary damages under La. C.C. art. 1998 and held that the plaintiffs (mortgagors) could not recover nonpecuniary damages for their tort and breach of contract claims against the mortgagee (Wells Fargo Home Mortgage Co.) because a mortgage contract by its nature does not satisfy the requirement of La. C.C. art. 1998.[38]

---

[35] R. Doc. 1-1 at 5.
[36] R. Doc. 1-1 at 6.
[37] See *Veal v. Wells Fargo Bank*, N.A., No. 16-CV-3998, 2016 WL 6024534, at *6 (E.D. La. Oct. 14, 2016); *Floyd v. Wells Fargo Home Mortg. Co.*, 848 F. Supp. 2d 635, 645 (E.D. La 2012).
[38] *Id*.

Other Louisiana state and federal courts have expressly found that non-pecuniary damages under La. C.C. art. 1998 are not available in numerous commercial contracts. For instance, in *Pinero v. Jackson Hewitt Tax Serv. Inc*., the Louisiana Eastern District found that a contract to prepare tax return was not intended to gratify a non-pecuniary interest, and, thus, the customer could not recover emotional damages for the tax return preparer's alleged breach of contract due to nonperformance.[39] In *Young v. Ford Motor Co.,* the Louisiana Supreme Court held that a contract to buy a truck was not intended to gratify a non-pecuniary interest.[40]

Absent a contract that gratifies a non-pecuniary interest, the obligee may only recover nonpecuniary damages by alleging and proving that the obligor's alleged breach of contract was "calculated to inflict grief, vexation, or inconvenience on" the oblige.[41] These requirements for recovering non-pecuniary damages apply even if the plaintiff alleges a bad-faith breach of contract.[42] Here, however, Plaintiffs do not allege that Defendant Carrington intended to aggrieve their feelings by allegedly breaching the Mortgage. Plaintiffs' claim for nonpecuniary damages is deficient, as a matter of law, and should be dismissed.

**f. The Plaintiffs abandoned their claims by neither addressing nor attempting to defend their original claims in their Opposition.**

In their Opposition to Defendant Carrington's Motion, Plaintiffs neither address nor attempt to defend their original claims for unfair trade practices, for violations of RESPA, the ADA, and the FHA, or NIED.[43] Where a plaintiff fails to defend or pursue a claim in response to a motion to dismiss, that claim may be properly dismissed as abandoned. *See, e.g.*, *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding plaintiff abandoned claim by

---

[39] *Pinero v. Jackson Hewitt Tax Serv. Inc*., 594 F. Supp. 2d 710, 717 (E.D. La. 2009).
[40] *Young v. Ford Motor Co*., 595 So.2d 1123, 1124 (La.1992).
[41] *Pinero,* 594 F. Supp. 2d 719.
[42] *Nolan v. Commonwealth Nat'l Life Ins. Co.*, 28,777 (La. App. 2nd Cir. 11/1/96), 688 So. 2d 581, 585.
[43] See R. Doc. 20.

failing to defend it in response to motion to dismiss); *Mocsary v. Ard*, No. 17-1713, 2018 U.S. Dist. LEXIS 164145, at *32 (M.D. La. Sept. 25, 2018) ("Plaintiff utterly failed to mention any of the state law claims in either of his *Opposition* memoranda. Accordingly, the state law claims are deemed abandoned . . . and the state law claims are dismissed with prejudice."); *Trieger v. Ocwen Loan Servicing, LLC*, No. 19-100, 2019 U.S. Dist. LEXIS 138841, at *28-29 (N.D. Tex. Aug. 15, 2019) (granting motion to dismiss with respect to RESPA claim that plaintiff failed to address in response to motion to dismiss); *Hernandez v. City of Grand Prairie Texas,* No. 16-2432, 2017 U.S. Dist. LEXIS 149883 at *32 (N.D. Tex. Sept. 15, 2017)(dismissing as abandoned state law claims that plaintiff refused to address in opposition to motion to dismiss). Thus, not only do Plaintiffs' claims fail on the merits, but they should also be dismissed as abandoned for Plaintiffs' failure to address them in their Opposition.

Instead, the Plaintiffs raise new allegations in their Opposition. Plaintiffs allege that Defendant Carrington has "effectively restricted Plaintiffs' ability to meaningfully communicate regarding the mortgage and foreclosure prevention efforts."[44] Plaintiffs further allege that telephone communications with Defendant Carrington have become "ineffective and emotionally distressing, Plaintiffs are denied meaningful assistance, or informed that no help is available despite Plaintiffs' ongoing efforts to save the property."[45] Plaintiffs also state a belief that "Defendant's internal handling of the account has resulted in Plaintiff being improperly restricted or obstructed within Defendant's servicing system, further interfering with Plaintiffs' ability to obtain meaningful communication, participation, and foreclosure prevention assistance."[46]

---

[44] R. Doc. 20 at 4.
[45] R. Doc. 20 at 4.
[46] R. Doc. 20 at 4.

Plaintiffs cannot amend the Complaint through their Opposition. "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Ferguson v. TransForce, Inc.*, No. 24-862, 2025 U.S. Dist. LEXIS 134279, at *11 (M.D. La. July 15, 2025) (citations omitted). A court also "should not consider claims raised for the first time in plaintiff's responsive memorandum." *Halter v. Allmerica Fin. Life Ins. & Annuity Co.*, No. 98-0718, 1998 U.S. Dist. LEXIS, 13250, at *4 (E.D. La. Aug. 19, 1998). Instead, only "new, consistent factual allegations contained in plaintiffs' opposition brief" may be considered. *Sanat V. Sanghani, MD, LLC v. United Healthcare Servs.*, No. 17-685, 2018 U.S. Dist. LEXIS 37505, at *3 (W.D. La. Feb. 8, 2018).

In violation of these principles, Plaintiffs attempt to rewrite the Complaint through their Opposition. Plaintiffs fail to connect them to the claims originally asserted in the Complaint, let alone explain how the new allegations cure their legally deficient claims. The Court therefore refuses to consider Plaintiffs' new allegations, which are asserted for the first time in their Opposition. Therefore, the Complaint should be dismissed with prejudice.

## III. CONCLUSION

For the reasons discussed above,

**IT IS RECOMMENDED** that the Motion to Dismiss filed by Defendant Carrington Mortgage Services, LLC (R. Doc. 5), be **GRANTED**, and that all claims against Carrington Mortgage Services, LLC, be **dismissed with prejudice**.

Signed in Baton Rouge, Louisiana, September 8, 2026.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**